UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____-Civ-_____

ROSS SINCLAIRE & ASSOCIATES, LLC,

    Petitioner,

v.

ARTHUR C. LICCHILLO U/A DATED
NOVEMBER 5, 1997 FBO ARTHUR C.
LICCHILLO; NEIL MARCUS,
INDIVIDUALLY; and NEIL J. MARCUS,
TRUSTEE FOR THE NEIL J. MARCUS
MONEY PURCHASE PENSION PLAN,

    Respondents.
_____/

**PETITION TO MODIFY ARBITRATION AWARD
AND INCORPORATED MEMORANDUM OF LAW**

    By and through its undersigned counsel, Ross Sinclaire & Associates, LLC ("RSA," or "Petitioner") respectfully submits this Petition to Modify Arbitration Award and Incorporated Memorandum of Law under 9 U.S.C. § 11 of the Federal Arbitration Act for modification or correction of the arbitration award rendered against it by a three-person panel (the "Panel") following an arbitration conducted under Financial Industry Regulatory Authority ("FINRA") Rules in the matter styled *Licchillo et al. v. Ross Sinclaire Assocs.*, 16-0372 ("the Award"), which Award miscalculates the damages and interest of the Award contrary to the applicable statutory formulas and at excessive interest rates and mistakenly inflates the recovery to two of the claimants in the arbitration by $581,321.18,[1] and in support thereof states as follows:

---

[1] RSA resolved its differences with the third claimant in the arbitration, Michael Pallotta.

### I. PRELIMINARY STATEMENT

The Panel awarded Arthur Licchillo ("Licchillo") $1,297,894.21 in compensatory damages and 12% interest from April 16, 2016 through payment and Neil Marcus ("Marcus") $492,304.70 in compensatory damages and 12% interest from April 16, 2016 through payment. (Hereinafter, for ease of reference, Licchillo and Marcus will be collectively referred to throughout these papers as "Respondents," as they are respondents on this Petition.) Using November 30, 2019 as the payment date, this results in an award of $1,862,478.10 for Licchillo and $706,457.23 for Marcus. However, the mandatory statutory formula requires that such statutory damages be calculated by (a) taking the amount of the investment, (b) with the legal interest rate from the time of the investment and (c) subtracting payments received. The Panel failed to deduct for interest previously paid—and principal returned—and the interest rates should not be 12%, but the "legal rates" under the statutes (4.75% - 6.89% for Florida and 6% for Pennsylvania). The resultant overcharge in the payment ordered in the Award is $581,321.18.[2] The Court should correct these miscalculations.

Although RSA believes that the entire Award is unjust, erroneous and not supported by the evidence presented at the hearing, RSA understands the very limited grounds on which an arbitration award can be vacated and does not seek such vacatur here. Rather, RSA presents this challenge only as against the miscalculated and mistaken damages and interest calculations. The miscalculations and mistakes are evident on the face of the Award and from the calculations Respondents submitted to the Panel and which the Panel adopted.

Despite the mandatory and clear statutory damages formula's applying to the statutory claims made and under which the relief was sought and granted, the Panel's Award erroneously

---

[2] RSA is not here contesting liability or the award of attorneys' fees and is paying the attorneys' fees and correctly calculated damages and interest.

failed to follow the formula, failed to deduct for interest already paid and then erroneously tacked on an extraordinary 12% interest rate applied retroactively, and which is ongoing. The interest the Panel awarded suffers from manifold material mistakes and miscalculations, which are apparent on the face of the Award itself. The state securities statutes are both mandatory and clear in their damages methods and applicable legal rates of interest. Indeed, in the case of Licchillo, the Panel specifically granted attorneys' fees under the very Florida securities statute that requires application of its damages formula and interest on the statutory claims "*at the legal rate*" – not the 12% added used in the Award. In the Award, the Panel denied attorneys' fees to Marcus, as the Pennsylvania securities statute (which also provides for interest at the "legal rate") does not provide for attorneys' fees.

## II. JURISDICTION AND VENUE

This Court has subject-matter jurisdiction to hear this application based upon the diversity of citizenship of the parties and the amount in controversy pursuant to 28 U.S.C. § 1332. RSA is a limited liability company whose members are citizens of Ohio and Kentucky. The Respondents in this proceeding are all residents of states other than Ohio and Kentucky— Neil Marcus and his Trust are citizens of Pennsylvania, and Arthur Licchillo and his Trust are citizens of Florida. The amount in controversy is well over $75,000.00. Venue is proper in this District pursuant to Section 11 of the FAA as the arbitration hearings were held in Boca Raton, Florida.

## III. FACTUAL AND PROCEDURAL BACKGROUND

**A. The Background To The Dispute And Claims**

The two Respondents here are former clients of RSA, a securities brokerage firm. They initially filed their arbitration claims with FINRA in 2016. In 2018, Marcus and Licchillo filed a

joint Amended Statement of Claim ("Amended Claim"). The amended pleadings defined their claims to be heard.

The Amended Claim alleged that the Respondents were long time clients of Anthony Conti ("Conti") a registered broker employed with RSA (Shannon Ex. 1, ¶ 2-3[3] ), and that Conti recommended that each Respondent invest in "Series True to the Game Secured Promissory Notes" ("Notes") being issued by Tax Credit Funding LLC ("TCF"), a Georgia limited liability company. RSA was acting as the exclusive placement agent for the Notes. The non-recourse Notes related to the production of a movie to be known as True to The Game. TCF was raising the funds through the issuance of its Notes and intended to loan the proceeds to a movie production company True to The Game LLC ("TTTG"). The Notes offered by TCF and purchased by Respondents (and other investors) were issued on April 15, 2014, had a maturity of 24 months and were to pay interest at 9½%, with a default interest rate of 12% (Shannon Ex. 2). The size of the offering was $3.5 million (Shannon Ex. 1, ¶ 21). Respondents asserted that RSA and its representatives did not adequately disclose certain material information and/or did not accurately disclose other information.

As of April 15, 2014, each of the Respondents executed Note Purchase Agreements with TCF and received Notes (Shannon Ex. 2). Individually or with their trusts, Marcus invested $550,000 and Licchillo $1,450,000. Accordingly, in April 2014, the Respondents loaned their money to TCF pursuant to the Notes. TCF, in turn, was to loan the funds to TTTG, with TTTG repaying TCF through tax credits (which TTTG would earn in the production of the movie, transfer to TCF and which TCF would then sell at a profit). (RSA's Answer is at Shannon Ex. 3.) There was no dispute in the parties' pleadings or at the hearing that the transaction went

---

[3] The accompanying affidavit of Michael G. Shannon (attached hereto as Exhibit "A") presents and authenticates the documents relevant to this application. The exhibits annexed to his affidavit will be referred to as ("Shannon Ex. e.g. 1, 2, etc…".)

-4-

astray and that TCF did not and could not fully repay funds owed to the investors, including Respondents, when due in April 2016. TCF ultimately made two payments to the Respondents, one for the accrued interest in April 2016 at the maturity of the Notes; and a further payment of partial principal in December 2016. As discussed further below, there is no dispute about the amounts or timing of those payments—nor should there be any dispute that the Panel miscalculated the Award by failing to deduct the interest paid to the Respondents.

In their Amended Claims, the Respondents asserted six "Causes of Action":

> FIRST – Misrepresentation and Omission of Material Facts *under Fl. Stat Ann §517.211 and 511.301 and P.S. §1-401 and 1-407* seeking "all statutory remedies for the material omissions and misrepresentations" (Shannon Ex. 1, at 12-16)
>
> SECOND – Breach of Fiduciary Duty (*Id.* at16)
>
> THIRD – Common Law Fraud (*Id.*)
>
> FOURTH – Common Law Negligence (*Id.* at 17)
>
> FIFTH – Failure to Supervise (*Id*)
>
> SIXTH – Punitive Damages (*Id.* at 18.)

In their Prayers for Relief, Respondents specifically asked for "1. Statutory Damages" under the Florida and Pennsylvania security statutes. (Shannon. Ex. 1, at 19-20.)

At Exhibit H to the Amended Claim the Respondents appended copies of the Fla. Stat Ann §517.211, 517.301 and corresponding P.S. §1-401 and 1-407 upon which the Misrepresentation and Omission claim was brought. (Shannon Exs. 4 and 5.) In addition, in their Pre-Hearing Brief, Marcus and Licchillo reiterated their claims under these Florida and Pennsylvania securities statutes and their requests for "Statutory Damages." (Shannon Ex. 6, at 6-16.) (For completeness, RSA's pre-hearing brief is also presented as Shannon Ex. 7.)

The evidentiary hearings were ultimately held before three FINRA arbitrators in Boca Raton, Florida, on August 26 through August 30, 2019 and October 14 through October 16, 2019. On October 17, 2019, the Panel Chairman directed that Respondents (i.e., the Claimants in the underlying arbitration) submit proof on their attorneys' fees claims (Shannon Ex. 8) and, following their submissions, on October 28, 2019, RSA replied and addressed entitlement to attorneys' fees under the applicable states' securities statutes arguing, in part, that no attorneys' fees could be awarded to Marcus because the Pennsylvania statute (unlike the Florida statute) did not provide for attorneys' fees. (*See* Shannon Ex. 9.)

**B. The Damages' Claims**

Again, there was no dispute about how much each Respondent invested in the Notes (Marcus invested $550,000 and Licchillo invested $1,450,000). There was similarly no dispute about how much TCF repaid to them before the arbitration claims were filed.

- Licchillo received $5,283.56 in October 2014, $302,580.33 in April 2016 and $152,105.79 in December 2016.
- Marcus received $114,771.85 in April 2016 and $57,695.30 in December 2016.

(See Respondents' Damages Calculations at Shannon Ex. 10 and 11)[4]

Notably, in all of Respondents' calculations, they presented purported balances of $492,304.70 (Marcus) and $1,297,894.21 (Licchillo) *"as of December 2016" which although they referenced interest paid of $114,771.85 (Marcus) and $302,580.33 made no deductions for those payments.*

---

[4] RSA in turn presented Net Out-of-Pocket calculations and at the closing and pointed out that Claimants would only be entitled to *statutory* interest (Shannon Exs. 12 and 13).

### C. The Panel's Award

The Panel issued its Award on November 6, 2019, finding RSA liable "on the claims of misrepresentation and omission of material facts and common law negligence." (Shannon Ex. 14, at 5.) As to these Respondents it directed monetary awards as follows:

Licchillo $1,297,894.21

Marcus $492,304.70

And on these miscalculated base figures, the Award included a directive that RSA pay "interest on the above stated sums *at the rate of 12% per annum accruing from April 16, 2016 through payment of the Award*."[5]  (emphasis added.)

### D. The Award's Material Miscalculations and Mistakes Regarding the Damages and Interest Awarded

Besides RSA's disagreement with the fundamental legal and factual underpinnings of the entire Award—which RSA is *not* challenging—the Award suffers from at least three glaring and material mistakes in its calculations. First, it does not follow the order of the arithmetic required by the mandatory statutory formulas. Second, it fails to deduct for the interest already paid and effectively double dips. Third, the Award applies an excessive and incorrect interest rate calculated from the wrong date.

There is no question about the derivation of the compensatory damages' figures recited in the Award. The figures (Marcus: $492,304.70 and Licchillo: $1,297,894.21) are *exactly* the "item III New Balance figures at December 7, 2016" as calculated by Respondents on their submissions to the Panel. (Shannon Exs. 10 and 11.) As shown below, there is also no question that those figures and the award of 12% interest on them are miscalculations under the statutes.

---

[5]  The Panel also directed payment of attorneys' fees for Licchillo "pursuant to Florida Statute §517.211(6)," and certain costs, which are not here challenged. The Panel also denied "any and all claims for relief not specifically addressed herein" including Marcus' claim for attorneys' fees (which RSA had pointed out were not recoverable under the Pennsylvania statute).

Respondents explicitly sought in the Amended Claim—and obtained in the Award—damages under the Florida and Pennsylvania state securities' statutes. These statutes are clear in the relief they provide and the damages calculations they require. The entire concept of these statutes is rescission based. An aggrieved party may recover:

> <u>Florida</u>: the *consideration paid* for the security or investment, *plus* interest thereon *at the legal rate from the date of purchase* [less the value of the security at time of sale] and *any income received* on the security or investment.
>
> <u>Pennsylvania:</u> the *consideration paid* for the security, together with interest *at the legal rate from the date of payment*, *less the amount of any income or distributions*, in cash or in kind, received on the security.

(Shannon Exs. 4 and 5) (emphasis added).

Both the Florida and Pennsylvania state securities statutes have clear and mandatory formulas for calculating damages:

A) the consideration paid, plus

B) interest *at the legal rate from date of investment*, less

C) the amount distributed or returned to the investor.

Apparently overlooking this statutory formula, the Panel accepted Respondents' claimed "balances," which made no deduction for the interest received and directed that further interest accrue on those figures at 12% from April 16, 2016.

Each subsection of the statutes requires interest at the "legal rate." In Florida, the legal rate of interest in effect at the time of investment in April 2014 was 4.75% and it increased to 6.89% currently. (Shannon Ex. 15). Pennsylvania's legal rate has been a steady 6% throughout the applicable time-period to Respondent's Claims and the Award. (Shannon Ex. 16). The calculations on the amount and the time-period are straight mathematical calculations and are reflected in Shannon Exhibit 17.

Applying the statutory damages' formulas eliminates the double-counting discussed above and shows the gross miscalculation and mistake as follows:

## Marcus

<u>Statutory Formula for Damages and Interest</u>

$550,000 (amount invested) plus 6% (legal rate) interest from April 15, 2014 (investment date) through November 30, 2019 ($185,625) for a total of $735,625 less $114,771.85 and $57,695.30 (the two distributions received) = **$563,157.85**

<u>Awarded Damages and Interest</u>

$492,304.70 plus 12% interest from April 16, 2016 – November 30, 2019 ($214,152.53) for a total of **$706,457.23**  (there was no deduction for interest paid)

## Licchillo

$1,450,000 (amount invested) plus variable Florida interest rates from April 15, 2014 to November 30, 2019 ($434,426.04) for a total of $1,884,426.04 less $5,283.56, $302,580.33 and $152,105.79 (the distributions received) = **$1,424,456.36**

$1,297,894.21 plus 12% interest from April 15- 2016 – November 30, 2019 ($564,583.89) for a total of **$1,862,478.10**  (there was no deduction for interest paid)

The materiality of these miscalculations and mistakes cannot be disputed:

| | |
|---|---|
| Marcus excess | $143,299.38 |
| Licchillo excess | $438,021.80 |
| Total excess | $581,321.18 |

## MEMORANDUM OF LAW

**A. Standard of Review**

Together, the failure to deduct interest paid and the inflated 12% interest rate applied and the reverse order of calculating the proper damages equation resulted in an excessive award which this Court should correct under Section 11 of the Federal Arbitration Action ("FAA"). The FAA governs judicial confirmation, vacatur, modification and correction of arbitration awards.  9 U.S.C. §10, 11.  Sections 10 and 11 of the FAA provide the exclusive means by which

a federal court may upset an arbitration panel's award.  *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586, 128 S. Ct. 1396, 1404-05, 170 L. Ed. 2d 254 (2008).  Section 10 empowers the court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).

Section 11 of the FAA authorizes a court, upon an application by any party, to ***modify or correct*** an arbitration award on certain enumerated grounds.  Relevant here is subsection FAA Section 11(a), which provides that an award may be modified or corrected "where there was an evident material miscalculation of the figures or an evident material mistake in the description of any person, thing, or property referred to in the award."  9 U.S.C. §11(a).

Although "judicial review of an arbitration award is narrowly limited," *Rosensweig v. Morgan Stanley & Co.*, 494 F.3d 1328, 1333 (11th Cir. 2007), the Eleventh Circuit recognizes that, in circumstances where the Panel makes a "mistake," modification of an arbitration award is permissible under Section 11.  *See AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 999 (11th Cir. 2007) (quoting U.S.C. § 11(a)); *see also Pochat v. Merrill Lynch, Fenner, Smith, Inc.*, 2013 U.S. Dist. LEXIS 119447, *61 (S. D. Fla. Aug. 22, 2013) (modifying damages from arbitration on application by losing party pursuant to Section 11(c)).

Indeed, as held in other Circuits,[6] "[w]hen an arbitration award orders a party to pay damages that have already been paid or which are included elsewhere in the award, a court may modify the award." *Eljer Mfg. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1254 (7th Cir. 1994); *accord Consol. Biscuit Co. v. Karpen*, No. 3:00-cv-7703, 2001 U.S. Dist. LEXIS 15264, at *6 (N.D. Ohio Aug. 28, 2001) ("If a panel awards damages that have already been paid, a court has

---

[6] Florida District Courts, specifically recognizing limited Eleventh Circuit authority on grounds for modification of arbitration awards, turn to other jurisdictions for guidance. *See e.g. Pochat,* 2013 U.S. Dist. LEXIS 119447 at 18.

authority to modify the award."). "Double recovery constitutes a materially unjust miscalculation which may be modified under section 11 of the Federal Arbitration Act." *Eljer Mfg.*, 14 F.3d at 1254.

Here, there is no question that the damages baseline figure did not deduct for the substantial interest already paid, did not follow the statutory order of the calculation functions and then failed to employ the mandatory "legal rates" of interest resulting in a grossly inflated award.

**B. Argument**

<u>**The Panel Miscalculated The Statutory Damages**</u>

The Eleventh Circuit has held that the authority of a district court to modify an arbitration award under Section 11 "turn[s] on the meaning" of the text of Section 11(a). *See AIG Baker,* 508 F.3d at 999. Section 11(a) provides that, "where there was an evident material miscalculation of the figures or an evident material mistake in the description of any person, thing, or property referred to in the award," a court may modify it. Interpreting that subsection, the Eleventh Circuit determined that a material mistake under 9 U.S.C §11(a) occurs where the arbitrators, who craft the award, "understand wrongly" or "recognize or identify incorrectly" the facts and circumstances surrounding the matter. *Id*. Here, the Award plainly demonstrates the Panel wrongly understood at least three things:  (i) the starting number of the amount invested and the order of the calculations, (ii) the need to apply the "legal rate" of interest from the date of investment and (iii) that all payments must then be deducted.  Where, as here, the state securities laws are the basis for recovery—which the Award itself states—the states' legal interest rate is mandated and applies to the amount invested from the date of investment (less payments received), not the mistaken 12% awarded from some other date and on a figure which ignores payments received.

*AIG Baker* does not stand in the way of RSA's application here. The "mistake" at issue in *AIG Baker* was that American Multi-Cinema ("American") had told the arbitrators during hearing that it had not paid $226,771 in real estate taxes that it was liable to pay the tenant under the terms of their agreement. However, American discovered that it had indeed paid the real estate taxes. The Eleventh Circuit reversed the decision of the District Court which ordered a modification of the arbitration award, because American had failed to inform the panel of the error that it had in fact paid the real estate taxes. It held:

> [The plain language of [Section 11(a)] embraces only an "evident material mistake" that appears in a description "in the award." Because the arbitration panel crafts the award, only the panel can make a mistake in the award. To make a "mistake" is "to understand wrongly" or to "recognize or identify incorrectly." Webster's II New Riverside University Dictionary 759 (1984).

Accordingly, the Eleventh Circuit held that the Panel's failure to incorporate this prior payment into the final award in that arbitration was more akin to "ignorance" than a "mistake." It reasoned: "The arbitration panel did not 'understand wrongly.' The panel lacked knowledge because American never provided the panel with information about the tax payment to the county. The arbitration award that Baker received may be a product of ignorance attributable to an oversight by American, but the award does not contain an 'evident material mistake in the description of any person, thing, or property referred to in the award.'" (citing 9 U.S.C. § 11(a)). Accordingly, the Eleventh Circuit interprets Section 11(a) to require that the arbitrator have known of the issue about which it was then mistaken. And, that – not ignorance – is what happened here.

Here, the amounts already paid were presented—right on the damages sheets that Respondents submitted—and the statutory formulas were provided and stated that interest was at the "legal rate." Thus, this petition for modification meets all of *AIG Baker*'s requirements.

Unlike in *AIG Baker*, Respondents calculated their compensatory damages, and showed – but did not deduct for – the payments they already received and they also gave the Panel copies of the statutes which mandated a "legal rate" of interest on the amount invested from the date of the investment. In turn, RSA in its closing, reminded the Panel of the limitations of "statutory" interest. The threshold issues for modification are met.

Because the facial mistake of the Award creates a windfall recovery (with no deductions for payments made), this is the quintessential case in which modification of the Award is appropriate under Section 11 of the FAA. The calculation is nothing but a flagrant miscalculation of every component of the statutes under which the damages were sought and awarded. It has been said that, "When an arbitration award orders a party to pay damages that have already been paid or which are included elsewhere in the award, a court may modify the award." *Eljer Mfg.,* 14 F.3d at 1254. Courts, therefore, modify awards under section 11, because "[d]ouble recovery constitutes a materially unjust miscalculation." *Id.* The effect of the miscalculation here is even more substantial than double dipping on a small piece of the damages claim or award.

*Eljer*'s non-controversial proposition—i.e., that an award essentially permitting double-recovery should be modified—remains good law in a number of Circuits. *See, e.g., Accord Consol. Biscuit Co. v. Karpen*, No. 3:00-cv-7703, 2001 U.S. Dist. LEXIS 15264, at *6 (N.D. Ohio Aug. 28, 2001) ("If a panel awards damages that have already been paid, a court has authority to modify the award."); *TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc*., 953 A.2d 726, 737 (Del. Ch. 2008) (quoting with approval *Eljer*'s proposition concerning a double recovery); *Mandl v. Bailey*, 159 Md. App. 64, 98, 858 A.2d 508, 528 (2004); *Sawtelle v. Waddell & Reed, Inc*., 304 A.D.2d 103, 116, 754 N.Y.S. 2d 264, 275 (2003); and *Cole v. Hiller,*

715 So. 2d 451, 456 (La. Ct. App. 1998).  By allowing Respondents to retain interest payments made and not deduct for them as the law requires is no different.

In *Turquoise Props. Gulf, Inc. v. Overmyer*, 81 So. 3d 1250, 1257 (Ala. 2011), a case applying Section 11 of the FAA, the Supreme Court of Alabama considered the vitality of the *Eljer* line of "double recovery permits modification" cases in the wake of the Eleventh Circuit's *AIG Baker* decision.  The appellee in *Turquoise* argued that the Eleventh Circuit in *AIG Baker* "expressly rejected the reasoning of *Eljer*," *id.* at 1256, but the court rebuffed that argument, finding instead that the Eleventh Circuit did ***not*** disagree with the *Eljer* court's conclusion that a double recovery can constitute an "evident material miscalculation of figures" under 9 U.S.C. § 11(a).  The *Turquoise* Court noted that unlike in the case before it—and unlike here—the *AIG Baker* court's comments concerning *Eljer* did not even involve a "miscalculation of figures," because there was no "miscalculation" at all there—the appellant in *AIG Baker* conceded that the award did not contain any "miscalculation."  *Id.*  As noted above, and as expressed in *Turquoise*, the arbitration panel at bar in *AIG Baker* was simply unaware of the (later realized) issue that the movant had first raised to the district court as the basis for modification of the award.  The limit of the *AIG Baker*'s holding was that there was no mistake or miscalculation.  Ultimately, the *Turquoise* Court reversed the lower court's decision denying a motion to modify the arbitration award to negate the double-recovery that the arbitration panel had mistakenly awarded.  *Id.* at 1258.

Similarly, in *Priority One Servs. v. W&T Travel Servs.*, 825 F. Supp. 2d 43 (D.D.C. 2011), the district court modified an award's interest start date to avoid a double recovery for the claimant.  Citing to *Eljer*, the court found that having interest run on an amount of principal—like here already included elsewhere in the award—constituted "an evident miscalculation of

figures or an evident material mistake" that required modification under Section 11(a). *See also Ford v. Merkle Inc*., No. 4:14CV00586 BSM, 2014 U.S. Dist. LEXIS 187519 (E.D. Ark. Dec. 16, 2014) (granting a motion to modify a prejudgment interest award containing a material miscalculation because the interest trigger date set by the arbitrator was before a portion of the funds were due plaintiff, thus, under Maryland law, those sums would not be subject to interest).

This Court should follow *Turquoise* and the series of cases modifying awards that provide for double-recovery or mistaken calculations. That the Respondents would receive a windfall under the Award, as written, cannot be credibly disputed.

The error in miscalculating the base damages award is not the only mistake in calculations in the Award—it carries a 12% interest rate, even though the claims Respondent prevailed under require that the states' "legal rate" of interest be used. It also applies the interest rate to the wrong base figure and starts it running on the wrong date. This also warrants modification under Section 11(a).

The damages claimed—and awarded—were based on the state securities' laws of Florida and Pennsylvania. As noted throughout these papers, those states have a specific mandated formula for calculating damages and interest. That formula was not applied here:

1) The formula begins with the amount invested (i.e., $550,000 for Marcus and $1,450,000 for Licchillo). The Panel used figures which first netted out payments of part of the principal (but ignored the interest paid).

2) The formula then provides for interest "at the legal rate" from the date of investment. The Panel used 12% and applied it from the date of default on April 15, 2016, not the April 15, 2014 investment date.

3) The Panel performed the functions of the formula in the wrong order and failed to deduct for interest payments made.

The result is a clear windfall which requires correction by this Court.

District courts also routinely modify arbitration awards that apply a mistaken interest rate. *See Bd. Of Cnty. Comm'rs of Benalillo v. BOK Finc. Sec., Inc.* 2019 U.S. Dist. LEXIS 43014, No. 1:17-cv-00948-PJK-KBM, *12 (D.N.M. Mar. 15, 2019) (denying vacatur of arbitration award, but granting modification of award to change 15% interest rate to the New Mexico statutory legal rate, 8.75%); *World S&L Ass'n v. Fed. Home Loan Bank of San Francisco*, No. 00-4749 MMC, (Docket No. 9), 2002 U.S. Dist. LEXIS 15875 (N.D. Cal. Aug. 19, 2002). This is because federal courts have the duty to ensure that interest awarded is proper when entering judgment. In *AIG Baker,* the Eleventh Circuit admonished the district court in that case to ensure that proper interest be awarded, irrespective of whether the underlying award was subject to modification. It instructed:

> As in any other civil action based on diversity of citizenship, the district court must look to state law to determine the availability and amount of prejudgment interest when it enters a judgment, regardless of whether that judgment confirms or modifies an award under the Federal Arbitration Act. The district court erred to the extent that it held otherwise.

508 F.3d at 1002.

This Court is thus duty bound to ensure that any judgment it enters stemming from the Award comports with state law and the required legal interest rates. As demonstrated below, no matter where the 12% interest rate that the Award includes may have been derived from, it has no applicability. It is a mistake made clear by the Award itself—the Respondents prevailed on their statutory securities laws claims and negligence claims, none of which allow the 12% interest awarded here.

First, negligence actions under Florida and Pennsylvania law do not permit pre-judgment interest at all, or limit pre-judgment interest to the statutory rate. *See Argonaut Ins. Co. v. May Plumbing Co.*, 474 So.2d 212 (1985) (holding that under Florida law, in negligence actions the

court has no discretion and can only apply the statutory rate of interest)**;** *Chiumento v. FDIC*, 1995 U.S Dist. LEXIS 4025 (E.D.Pa. 1995) (pre-judgment interest not permitted in negligence actions under Pennsylvania law).

As for the specified securities law statutes of Pennsylvania and Florida, which the Respondents prevailed under, they contain a legislatively-mandated formula for the applicable damages and the governing interest rate all calculated on a specified formula. *See supra*, Section II.D.2; *see also Ainsworth v. Skurnick*, 960 F.2d 939, 940 (11th Cir. 1992 ) (upholding lower court ruling that upon a finding of a violation of Fl. St. Section 517 damages must be awarded *in accordance with section 517.211*; *see also* 70 P.S. 1-501(a) (which permits a prevailing Pennsylvania investor to **recover the consideration paid for the security, together with interest at the legal rate from the date of payment**, less the amount of any income or distributions, in cash or in kind, received on the security, upon the tender of the security; 41 P.S. 202: (where statutes call for the "legal rate of interest" such rate shall be "construed to refer to the rate of interest of **six per cent per annum**.") (emphasis added).

It is a mistake for an award to run afoul of the statutes that permit rescission of an investment—the only applicable remedy under the securities statutes here—to also require the losing party to honor the interest rate contained in the rescinded investment contract. See *Waters v. Int'l Precious Metals Corp.,* 172 F.R.D. 479, 498 (S.D. Fla. 1996) (finding that the purpose of rescission damages under Fl. Section 517, when rescission damages are applicable, are for the purpose of making it as though the defrauded never entered into the transaction). Indeed, courts are clear that unless a party prevails on a breach of contract claim that provides for it—which did not happen here—cribbing a related contract's interest rate as an omnibus default rate is a

miscalculation and mistake warranting modification.[7] *See Degen v. Bunce*, No. 93-5674, 1995 U.S. Dist. LEXIS 3576, *22-23 (E.D. Pa. Mar. 13, 1995) (holding that even though purchased bonds at issue specified an annual interest rate of 10%, because investors prevailed on a claim under the Pennsylvania Securities Act rather than as a breach of contract action on the bonds, the court applied the legislatively-mandated statutory rate of interest of 6%). That is precisely the issue here.

And where an award conflicts with those statutory formula or interest rate requirements, they are subject to modification under the FAA. In fact, the district court faced a very similar issue in *Lex v. Weinar*, 2015 U.S. Dist. LEXIS 41288 (E.D. Pa. Mar. 31, 2015). In that case, after recognizing the strong presumption under the FAA in favor of enforcing arbitration awards, the court nevertheless modified an award which called for compound pre-judgment interest of 6%, where Pennsylvania law mandates that pre-judgment interest be limited to 6% simple interest. *Id.* at *9-*10. There was no basis in law or fact for this portion of the award, therefore, the court corrected it. *Id.* That the instant Award's 12% interest rate may have somehow derived from the (inapplicable) default rates referenced in the Notes at issue does not alter the analysis.

This principle was also reinforced in *World S&L Ass'n v. Fed. Home Loan Bank of San Francisco*, No. 00-4749 MMC, (Docket No. 9), 2002 U.S. Dist. LEXIS 15875 (N.D. Cal. Aug. 19, 2002), where the claimant asserted claims for declaratory relief, breach of contract, and breach of good faith and fair dealing. *Id.* at *5. After a hearing, the arbitrator found for the claimant and ordered prejudgment interest at 6.6%. *Id.* at *22. On a motion challenging the arbitration award, the district noted that prejudgment interest is generally awarded according to

---

[7] Indeed, not only was RSA not the issuer on the Notes, but there was no breach of contract claim even asserted in the claims.

the rate set forth in 28 U.S.C. § 1961, which was approximately 4% at the time of the dispute. *Id.* at *24. The claimant, however, relied on the parties' agreement to support its claim for prejudgment interest at the higher rate of 6.6%. *Id.* The 6.6% interest figure that was used in the arbitration award came from the parties' agreement. The District Court, however explained how that interest rate does not in any way apply to the claimant or its claims, and noted that the respondent "cites no authority for the proposition that federal law allows courts to interpret" contracts at it sees fit. *Id.* at *24-25. The district court, therefore, modified the arbitrator's award to reflect the appropriate interest rate of 4%. *Id.* at *28.

Here, the 12% interest rate calculated on the wrong figure from the wrong date included in the Award is a mistake and miscalculation which this Court can and should correct under FAA §11. Allowing the Respondents to also retain the interest actually paid—without deduction or credit— makes the granting of RSA's Petition even more compelling.

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b), Petitioner respectfully requests the Court hold a hearing on the merits of its Petition so that it can more fully lay out its position, present its calculations, and provide any further background that the Court may need to render its ruling. Petitioner estimates that two hours will be necessary for oral arguments.

## **PRAYER FOR RELIEF**

For the reasons stated herein, and as properly calculated at Shannon Ex. 17, RSA respectfully requests that the Court enter an Order:

a. Modifying the Award by deleting paragraphs 2, 3 and 5 of the Award and replacing them as shown on page 10 *supra* with the following, which is calculated in accordance with the applicable statutory formulas:

> Respondent [RSA] is liable for and shall pay to Claimant Licchillo the sum of $1,424,456.36 and Marcus the sum of $563,157.85 (which sums include all interest through November 30, 2019.)  If paid later, said sums shall accrue interest from December 1, 2019 at 6.89% annually for claimant Licchillo and 6% annually for claimant Marcus.[8]

b. Granting such other relief as the Court deems proper

Dated:  December 4, 2019.

Respectfully submitted,

**GrayRobinson, P.A.**
401 East Jackson Street, Suite 2700
Tampa, Florida  33602
Ph:  813-273-5000; Fax:  813-273-5145

      */s/ Josef Y. Rosen*
Josef Y. Rosen, Esq.
Florida Bar No. 112719
josef.rosen@gray-robinson.com
Frederick S. Schrils, Esq.
Florida Bar No. 0604003
frederick.schrils@gray-robinson.com
*Attorneys for Petitioner*

Michael G. Shannon
New York Bar No. 1417336
Michael.Shannon@thompsonhine.com
**Thompson Hine LLP**
335 Madison Avenue, 12th Floor
New York, New York  10017
Phone:  212-344-5680; Fax:  212-344-6101
*Attorney for Petitioner seeking admission Pro Hac*

---

[8] RSA is paying these sums to the Respondents (and the attorneys' fees awarded to Licchillo) contemporaneously with the commencement of this proceeding.